**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**JASON M. C.,[1]**

**Plaintiff,**

**v.** **Civil Action 1:25-cv-658**
**Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

# OPINION AND ORDER

Plaintiff, Jason M. C. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") and for supplemental security income ("SSI"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 7). For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED**.

## I. BACKGROUND

Plaintiff filed his DIB and SSI applications in April 2023, alleging that he has been disabled since July 18, 2022. (R. at 245–53.) After those applications were denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a telephonic hearing on July 5,

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

2025, at which Plaintiff, who was represented by counsel, appeared and testified. (*Id*. at 39–70.) A vocational expert ("VE") also appeared and testified. On August 26, 2024, the ALJ issued an unfavorable determination, which became final on July 24, 2025, when the Appeals Council denied Plaintiff's request for review. (R. at 7–29, 1–6.)

Plaintiff seeks judicial review of that unfavorable determination. He contends that the ALJ reversibly erred by failing to properly evaluate whether his obesity met or medically equaled a listed impairment and by failing to incorporate into his RFC moderate social interaction limits that the ALJ endorsed earlier in the determination. (Pl.'s Statement of Errors 5–12, ECF No. 13.) The Court finds that both contentions of error lack merit.

## II. THE ALJ'S DECISION

The ALJ issued the unfavorable determination on August 26, 2024. (R. at 7–29.) The ALJ initially determined that Plaintiff met the insured status requirements through December 31,

2027. (*Id*. at 12.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of July 18, 2022. (*Id*.) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: degenerative disc disease of the lumbar spine; diabetes mellitus; psychogenic nonepileptic seizure disorder; syncope and collapse; obesity; major depressive disorder; generalized anxiety disorder; and alcohol abuse. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 13.)

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). *See also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift or carry 10 pounds frequently and 20 pounds occasionally; stand or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; push or pull within the aforementioned weight restrictions; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; occasionally have exposure to extreme cold or extreme heat; never have exposure to unprotected heights or moving mechanical parts; concentrate and persist sufficiently to carry out simple instructions; occasionally perform team or tandem tasks; occasionally interact with the public; and occasionally tolerate changes in a routine work setting.

(*Id*. at 15–16.) At step four, the ALJ relied on the VE's testimony to determine that Plaintiff could not perform any past relevant work. (*Id*. at 22.) Relying again on the VE's testimony at step five, the ALJ determined that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of cleaner, office support clerk, and sorter. (*Id*. at 23.) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 24.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(a)(1), (b)–(c); 416.945(a)(1), (b)–(c).

standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health & Hum. Serv.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As previously explained, Plaintiff raises two contentions of error: the ALJ erred when evaluating whether his obesity met or medially equaled a listed impairment and by determining that he had moderate social interaction limits at step three but then later omitting that limit from his RFC. (Pl.'s Statement of Errors 5–12, ECF No. 13.) Neither of these contentions are well taken.

**A. Step Three Standards**

At step three, an ALJ must compare a claimant's impairments to an enumerated list of medical conditions that the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a); 416.925(a). Each listed impairment describes "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3); 416.925(a)(3). A claimant has the burden of showing that he has an impairment, or combination of impairments, that meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Foster v. Halter*, 279 F.3d 348, 345 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If a claimant meets all criteria for a listing, he is disabled; otherwise, an ALJ must proceed to the next step in the sequential evaluation process. 20 C.F.R. § 404.1520(d)–(e); 416.920(d)–(e).

**B. The ALJ's Consideration of Obesity at Step Three**

Plaintiff contends that the ALJ failed to properly evaluate whether his obesity met or medically equaled a listing at step three. (Pl.'s Statement of Errors 8–12, ECF No. 13.) The Court disagrees.

Social Security Ruling (SSR) 19-2p governs how an ALJ must evaluate obesity at the different steps in the sequential disability analysis, including at step three. *See Soc. Sec. Ruling 19-2p; Titles II & XVI: Evaluating Cases Involving Obesity*, SSR 19-2p, 2019 WL 2374244 (May 20, 2019). It provides that obesity is not itself a listed impairment. *Id*. at *4. It further provides, however, that the functional limitations caused by obesity, alone or in combination with other impairments, may medically equal a listed impairment by, for example, increasing the

severity of a coexisting or related impairment. *Id*. Accordingly, an ALJ must evaluate obesity based on the information in each individual case. *Id*.

The ALJ did that here. At step three, the ALJ wrote as follows:

> Obesity, although not a listed impairment, is a medically determinable impairment. The combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately (Social Security Ruling 19-2p). The additional and cumulative effects of obesity have been considered in evaluating whether the criteria of any listed impairment is met or equaled, as well as in evaluating the claimant's residual functional capacity. The claimant's obesity does not meet or medically equal any listing, singly or in combination with the other impairments, because there is no evidence in the case record of the requisite impact on musculoskeletal, respiratory, cardiovascular, endocrine, or other body system functioning.

(*Id*.) As this discussion demonstrates, the ALJ considered Plaintiff's obesity alone and in combination with his other impairments and concluded that it did not meet or medically equal a listing because the record evidence did not show that Plaintiff's obesity had the required effect on his "musculoskeletal, respiratory, cardiovascular, endocrine, or other body system functioning." (*Id*.) That sufficiently complied with SSR 19-2p at step three.

Plaintiff nevertheless contends that the ALJ erred because he failed to consider that Plaintiff's BMI was "well in excess of 30." (Pl.'s Statement of Errors 8–9, ECF No. 13.) But the ALJ explicitly discussed Plaintiff's height and weight throughout the decision and noted his BMI more than once. (R. at 16, 17, 19.) The Court, therefore, cannot find that the ALJ overlooked the extent of Plaintiff's obesity.

More importantly, SSR 19-2p indicates that the functional impact of obesity should not be evaluated solely by reference to a particular weight or BMI level. Indeed, for example, at step two, "no specific weight, body-mass index, or descriptive terms by a medical source establish" can establish obesity as severe. 2019 WL 2374244, at *4. And at step three, an ALJ must

"evaluate each case based on the information in the case record." *Id*. The relevant question, therefore, was not simply how high Plaintiff's BMI was, but whether the evidence showed that his obesity caused or exacerbated functional limits such that it met or medically equaled a listing. The ALJ expressly determined it did not.

To be sure, the ALJ could have said more about how the record evidence did not establish that Plaintiff's obesity had "the requisite impact on [Plaintiff's] musculoskeletal, respiratory, cardiovascular, endocrine, or other body system functioning." (R. at 14.) But an ALJ who determines that a condition does not meet or medically equal a listing need not spell out every finding that led to that determination. Instead, a plaintiff is required to prove that he or she did, in fact, satisfy a listing.

Plaintiff has not met that burden. He merely urges that listing level severity "may have been established" had the ALJ had done things differently. (Pl.'s Statement of Errors 11, ECF No. 13.) He also vaguely asserts that his obesity "appears to increase the severity of [his] coexisting musculoskeletal impairments." (*Id*.) He does not, however, identify any particular listing that he claims to meet or medically equal, set out that listing's requirements, or explain how the record shows that he met them. Without that showing, he has failed to establish reversible error at step three. This contention of error, therefore, lacks merit.

### C. The ALJ's Failure to Incorporate a "Moderate Social Interaction" Limit

Plaintiff also contends that the ALJ erred by determining that he had a moderate social interaction limit at step three but then not including that exact limit in his RFC or explaining its omission. (Pl.'s Statement of Errors 5–8, ECF No. 13.) (Pl.'s Statement of Errors 5, ECF No. 13.) Again, the Court is not persuaded.

When an ALJ evaluates a claimant's mental impairments at steps two and three, he must use a special psychiatric review technique ("PRT"). *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims,* SSR 96-8P, 1996 WL 374184, at *4 (S.S.A. July 2, 1996); 20 C.F.R. §§ 404.1520a; 416.920a. The PRT requires an ALJ to "rate the degree of functional limitation resulting from a claimant's mental impairment(s) by reference to four functional areas: (1) an individual's ability to understand, remember, and apply information; (2) interact with others; (3) concentrate, persist, and maintain pace; and (4) adapt or manage oneself." 1996 WL 374184, at* 4. These four aspects of mental functioning are referred to as the "paragraph B" criteria, because they appear in paragraph B of many listings involving mental impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A(2)(b).

Here, the ALJ used the PRT when considering if Plaintiff's mental impairments met or medically equaled a listing and determined that Plaintiff had a moderate social interaction limit. (R. at 14–15.) The ALJ wrote as follows:

> In interacting with others, the claimant has a moderate limitation. Treatment records do not reveal marked difficulties interacting with others in work or social settings. The claimant also currently resides with his girlfriend and maintains frequent contact with his father, with no apparent difficulties. The claimant testified that he experiences panic attacks and social anxiety, but his testimony reveals no marked difficulties interacting with others. In addition, reviews of the record performed by Dr. Zeune and Dr. Souder indicate a moderate level of limitation in this area (Ex. 1A, 3A, 6A, 7A, 2F, 3F, 4F, 5F, 9F, 17F and 18F).

(*Id.*)

The ALJ did not, however, include in Plaintiff's RFC a moderate social interaction limit verbatim. (*Id*. at 16.)[4] Plaintiff contends that this constituted an internal inconsistency that the ALJ was required to explain. (Pl.'s Statement of Errors 6, ECF No. 13; Pl.'s Reply 2, ECF No. 16.) But he conflates an ALJ's paragraph B findings with an RFC finding. And as another Court has explained, those findings are not the same.

> It is well established that limitations opined with regard to the "paragraph B" and "paragraph C" criteria will not necesarily (*sic*) result in identical or even similar limitations within the RFC determination or subsequent steps of the sequential evaluation. *See Turbeville v. Colvin*, No. 1:12-CV-00061, 2014 WL 6605483, at *10 (M.D. Tenn. Nov. 19, 2014) ("[Step 3 and the RFC] are separate steps and a finding at one step does not necessarily equate to the same finding being made at a later step."); *Pinkard v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) (finding that "the ALJ does not have to include paragraph B finding in his RFC finding" and concluding that "the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a 'moderate limitation in concentration, persistence, and pace' in his residual functional capacity finding at steps four and five"); *Bailey v. Astrue*, No. CIV.A. 10-227-JBC, 2011 WL 3880503, at *2 (E.D. Ky. Aug. 31, 2011)("The RFC assessment takes into account all of the relevant evidence in the case record, . . . and the ALJ was not required to specifically adopt 'paragraph B' findings in his development of a complete and accurate assessment of Bailey's mental impairment.") (citing Soc. Sec. Ru. 96-8p, 1996 WL 374184).

*Mowery v. Berryhill*, No. 3:16-CV-502-HBG, 2017 WL 4364182, at *3 (E.D. Tenn. Sept. 29, 2017).

Indeed, the ALJ specifically provided that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of

[4] Commissioner notes that the ALJ included in Plaintiff's RFC social interaction limits. (Def.'s Mem. Opp'n 4–5, ECF No. 15.) Specifically, the ALJ limited Plaintiff to occasionally performing team or tandem tasks and occasionally interacting with the public. (r. at 16.) The ALJ based this limit on findings from state agency reviewers who found that Plaintiff was limited to work that involved superficial interactions and no conflict resolution or persuasion. (*Id*. at 22, 89, 100.) Plaintiff does not, however, challenge the ALJ's evaluation of that evidence. Any such challenge has thus been forfeited.

mental impairments at steps 2 and 3 of the sequential evaluation process." (R. at 15.) Therefore, the Court finds that the ALJ was not required to include in Plaintiff's RFC limitations that were identified at step three.

## V. CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's non-disability determination and **OVERRULES** Plaintiff's Statement of Errors.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE